**WEIL, GOTSHAL & MANGES LLP**
Ray C. Schrock, P.C. (admitted *pro hac vice*)
Ryan Preston Dahl (admitted *pro hac vice*)
Candace M. Arthur (admitted *pro hac vice*)
Daniel Gwen (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

**HUNTON ANDREWS KURTH LLP**
Tyler P. Brown (VSB No. 28072)
Henry P. (Toby) Long, III (VSB No. 75134)
Nathan Kramer (VSB No. 87720)
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218

*Attorneys for Debtors and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

----------------------------------------------------------- x
                                          :
In re                                     :          **Chapter 11**
                                          :
**CHINOS HOLDINGS, INC.,** *et al.,*      :          **Case No. 20–32181 (KLP)**
                                          :
                       **Debtors.**[1]    :          **(Jointly Administered)**
                                          :
----------------------------------------------------------- x

## STATEMENT OF FINANCIAL AFFAIRS FOR
## J. CREW VIRGINIA, INC. (CASE NO. 20-32180)

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Chinos Holdings, Inc. (3834); Chinos Intermediate Holdings A, Inc. (3301); Chinos Intermediate, Inc. (3871); Chinos Intermediate Holdings B, Inc. (3244); J. Crew Group, Inc. (4486); J. Crew Operating Corp. (0930); Grace Holmes, Inc. (1409); H.F.D. No. 55, Inc. (9438); J. Crew Inc. (6360); J. Crew International, Inc. (2712); J. Crew Virginia, Inc. (5626); Madewell Inc. (8609); J. Crew Brand Holdings, LLC (7625); J. Crew Brand Intermediate, LLC (3860); J. Crew Brand, LLC (1647); J. Crew Brand Corp. (1616); J. Crew Domestic Brand, LLC (8962); and J. Crew International Brand, LLC (7471). The Debtors' corporate headquarters and service address is 225 Liberty St., New York, NY 10281.

## GLOBAL NOTES AND STATEMENTS OF LIMITATIONS, METHODOLOGY, AND DISCLAIMERS REGARDING THE DEBTORS' SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

Chinos Holdings, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), are filing their respective *Schedules of Assets and Liabilities* (each, a "**Schedule**," and collectively, the "**Schedules**") and *Statements of Financial Affairs* (each, a "**Statement**" and collectively, the "**Statements**") in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "**Bankruptcy Court**") pursuant to section 521 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

These *Global Notes and Statements of Limitations, Methodology, and Disclaimer Regarding the Debtors' Schedules and Statements* (collectively, the "**Global Notes**") pertain to, and are incorporated by reference in, and comprise and integral part of all of the Schedules and Statements. The Global Notes are in addition to the specific notes set forth below with respect to the Schedules and Statements (the "**Specific Notes**," and, together with the Global Notes, the "**Notes**"). These Notes should be referred to, and referenced in connection with, any review of the Schedules and Statements.

The Debtors' management prepared the Schedules and Statements with the assistance of their advisors and other professionals. The Schedules and Statements are unaudited and subject to potential adjustment. In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of preparation. The Debtors' management team and advisors have made reasonable efforts to ensure that the Schedules and Statements are as accurate and complete as possible under the circumstances; however, subsequent information or discovery may result in material changes to the Schedules and Statements and errors or omissions may exist. Notwithstanding any such discovery, new information, or errors or omissions, the Debtors do not undertake any obligation or commitment to update the Schedules and Statements.

The Debtors reserve all rights to amend or supplement the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate, including the right to dispute or otherwise assert offsets or defenses to any claim reflected on the Schedules and Statements as to amount, liability, classification, identity of Debtor, or to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated." Furthermore, nothing contained in the Schedules, Statements, or Notes shall constitute a waiver of any of the Debtors' rights or an admission with respect to their chapter 11 cases, including any issues involving objections to claims, substantive consolidation, equitable subordination, defenses, characterization or re-characterization of contracts and leases, assumption or rejection of contracts and leases under the provisions of chapter 3 of the Bankruptcy Code, causes of action arising under the provisions of chapter 5 of the Bankruptcy Code, or any other relevant applicable laws to recover assets or avoid transfers.

<u>**Global Notes and Overview of Methodology**</u>

       **The Schedules, Statements, and Notes should not be relied upon by any persons for information relating to current or future financial conditions, events, or performance of any of the Debtors or their affiliates.**

1.     **Description of the Cases**.  On May 4, 2020 (the "**Petition Date**"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On May 5, 2020, the Bankruptcy Court entered an order authorizing the joint administration of the chapter 11 cases pursuant to Bankruptcy Rule 1015(b) [Docket No. 99].  Notwithstanding the joint administration of the Debtors' cases for procedural purposes, each Debtor has filed its own Schedules and Statements. On May 13, 2020, the United States Trustee for the Eastern District of Virginia, Richmond Division (the "**U.S. Trustee**") appointed an official committee of unsecured creditors pursuant to section 1102(a)(1) of the Bankruptcy Code (the "**Creditors' Committee**").

2.     **Basis of Presentation**.  For financial reporting purposes, the Debtors generally prepare consolidated financial statements, which include information for the Debtors and their non-Debtor affiliates.  The Schedules and Statements are unaudited and reflect the Debtors' reasonable efforts to report certain financial information of each Debtor on an unconsolidated basis.  These Schedules and Statements neither purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("**GAAP**"), nor are they intended to be fully reconciled with the financial statements of each Debtor.

     The Debtors used reasonable efforts to attribute the assets and liabilities, certain required financial information, and various cash disbursements to each particular Debtor entity.  Because the Debtors' accounting systems, policies, and practices were developed for consolidated reporting purposes rather than for reporting by legal entity, however, it is possible that not all assets and liabilities have been recorded with the correct legal entity on the Schedules and Statements. Specifically, the Debtors do not account for accounts payable and payments to individual creditors on a legal entity basis.  Substantially all payments are made by J. Crew Operating Corp. on behalf of the various entities and therefore are presented as such in the Schedules and Statements.  Intercompany receivables and payables are created to account for these transactions by legal entity.  Therefore, unless indicated otherwise, scheduled claims are listed as a liability of J. Crew Operating Corp.  The Debtors reserve all rights to supplement and amend the Schedules and Statements in this regard, including with respect to reallocation of assets or liabilities to any particular entity.

3.     **Reporting Date**.  Unless otherwise noted on the specific responses, the Schedules and Statements generally reflect the Debtors' books and records as of the close of

business on the Petition Date.  The liability values are as of the Petition Date, adjusted for authorized payments made under the First Day Orders (as defined below).

4.    **Current Values**.  Unless otherwise noted on the specific responses, the assets and liabilities of each Debtor are listed in the Schedules and Statements on the basis of the net book value of the asset or liability in the respective Debtor's accounting books and records.

5.    **Confidentiality**.  There may be instances where certain information was not included or redacted due to the nature of an agreement between a Debtor and a third party, concerns about the confidential or commercially sensitive nature of certain information, or to protect the privacy of an individual.

6.    **Consolidated Entity Accounts Payable and Disbursement Systems**.  As described in the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Continue Participating In Existing Cash Management System, and Using Bank Accounts and Business Forms, and (B) Continue Intercompany Transactions, (II) Providing Administrative Expense Priority for Postpetition Intercompany Claims, (III) Extension of Time to Comply with Requirements of 11 U.S.C. § 345(b), and (IV) Granting Related Relief* [Docket No. 7], the Debtors utilize an integrated, centralized cash management system, in the ordinary course of business, to collect, concentrate, and disburse funds generated by their operations (the "**Cash Management System**").  The Debtors maintain a master concentration account to pay the Debtors' obligations through the following accounts:  (a) disbursement accounts, (b) payroll account, (c) investment accounts, (d) open account and letter of credit account, and (e) non-debtor cash management systems.

In the ordinary course of business, the Debtors maintain business relationships among each other, which result in intercompany receivables and payables (the "**Intercompany Claims**") arising from intercompany transactions (the "**Intercompany Transactions**").  As set forth more fully in the Cash Management Motion, Intercompany Transactions primarily relate to income taxes or fees charged by certain Debtors or non-Debtor affiliates to other Debtors or non-Debtor affiliates on account of the intercompany provision of goods or services.  Historically, Intercompany Claims are not settled by actual transfers of cash among the Debtors.  Instead, the Debtors track all Intercompany Transactions in their centralized accounting system, which concurrently are recorded on the applicable Debtors' balance sheets and regularly reconciled.  The Debtors' accounting system requires that all general ledger entries be balanced at the legal entity level, with certain legal entities consolidated.  Unless otherwise noted, the Debtors have reported the intercompany receivables and intercompany payables among the Debtors as assets on Schedule A/B or as liabilities on Schedule E/F, as appropriate.

7.    **Accuracy**.  The financial information disclosed herein was not prepared in accordance with federal or state securities laws or other applicable nonbankruptcy

law or in lieu of complying with any periodic reporting requirements thereunder. Persons and entities trading in or otherwise purchasing, selling, or transferring the claims against or equity interests in the Debtors should evaluate this financial information in light of the purposes for which it was prepared. The Debtors are not liable for and undertake no responsibility to indicate variations from securities laws or for any evaluations of the Debtors based on this financial information or any other information.

8.      **Net Book Value of Assets**.  In many instances, current market valuations are not maintained by or readily available to the Debtors.  As such, wherever possible, net book values as of the Petition Date are presented.  Amounts ultimately realized based on market valuations may vary materially from net book value (or other value so ascribed).  Accordingly, the Debtors reserve all rights to amend, supplement, and adjust the asset values set forth in the Schedules and Statements.  As applicable, fixed assets and leasehold improvement assets that fully have been depreciated or amortized, or were expensed for GAAP accounting purposes, have no net book value, and, therefore, are not included in the Schedules and Statements.

9.      **Undetermined Amounts**.  Claim amounts that could not readily be quantified by the Debtors are scheduled as "undetermined," "unknown," or "N/A."  The description of an amount as "undetermined," "unknown," or "N/A" is not intended to reflect upon the materiality of the amount.

10.     **Excluded Assets and Liabilities**.  The Debtors believe that they have identified, but did not necessarily value, all material categories of assets and liabilities in the Schedules.  The Debtors have excluded the following items from the Schedules and Statements: certain accrued liabilities, including accrued salaries and wages, employee benefit accruals, and certain other accruals, certain prepaid and other current assets considered to have *de minimis* or no market value.  Other immaterial assets and liabilities may also have been excluded.

11.     **Totals**.  All totals that are included in the Schedules and Statements represent totals of all the known amounts included in the Schedules and Statements and exclude items identified as "unknown" or "undetermined."  If there are unknown or undetermined amounts, the actual totals may be materially different from the listed totals.

12.     **Currency**.  All amounts shown in the Schedules and Statements are in U.S. Dollars, unless otherwise indicated.

13.     **Payment of Prepetition Claims Pursuant to First Day Orders**.  The Debtors have authority to pay certain outstanding prepetition payables pursuant to certain orders by the Bankruptcy Court entered in connection with the Debtors' chapter 11 cases authorizing the Debtors to pay certain prepetition amounts (collectively, the "**First Day Orders**").  As such, outstanding liabilities may have been reduced by any court-approved postpetition payments made on prepetition payables.  If these liabilities have been satisfied, they are not listed in the Schedules and Statements

unless otherwise noted.  If the Debtors later pay any amount of the claims listed in the Schedules and Statements pursuant to any orders entered by the Bankruptcy Court, the Debtors reserve all rights to amend or supplement the Schedules and Statements or to take other action, such as filing claims objections, as is necessary and appropriate to avoid overpayment or duplicate payments for liabilities.

14. **Other Paid Claims**.  If the Debtors have reached any postpetition settlement with a vendor or other creditor that expressly supersedes the Schedules and Statements or that was entered into after filing of the Schedules and Statements, the terms of such settlement will prevail, supersede amounts listed in the Debtors' Schedules and Statements, and shall be enforceable by all parties, subject to Bankruptcy Court approval.

15. **Setoffs**.  The Debtors routinely incur certain setoffs from customers and suppliers in the ordinary course of business.  Setoffs in the ordinary course can result from various items including, but not limited to, pricing discrepancies, customer programs, returns, promotional funding, and other disputes between the Debtors and their customers and suppliers.  These routine setoffs are consistent with the ordinary course of business in the Debtors' industry, and, therefore, can be particularly voluminous, unduly burdensome, and costly for the Debtors to regularly document.  Therefore, although such setoffs and other similar rights may have been accounted for when scheduling certain amounts, these ordinary course setoffs are not independently accounted for, and, as such, are excluded from the Debtors' Schedules and Statements.  Any setoff of a prepetition debt to be applied against the Debtors is subject to the automatic stay and must comply with section 553 of the Bankruptcy Code.

16. **Inventory**.  Merchandise inventories are carried at the lower of average cost or net realizable value.   The Debtors capitalize certain design, purchasing and warehousing costs in inventory.  The Debtors evaluate all of their inventories to determine excess inventories based on estimated future sales.  Based on historical results experienced through various methods of disposition, the Debtors write down the carrying value of inventories that are not expected to be sold at or above cost.  Additionally, the Debtors reduce the cost of inventories based on an estimate of lost or stolen items each period.

17. **Property, Plant and Equipment**.  Property and equipment are stated at cost and are depreciated over the estimated useful lives using the straight-line method.  Buildings and improvements are depreciated over estimated useful lives of twenty years.  Furniture, fixtures and equipment are depreciated over estimated useful lives, ranging from three to ten years.  Leasehold improvements are depreciated over the shorter of their useful lives or related lease terms (without consideration of optional renewal periods).  The Debtors capitalize certain costs (included in fixtures and equipment) related to the acquisition and development of software and amortizes these costs using the straight-line method over the estimated useful life of the software, which is three to five years. Certain development costs not meeting the criteria for capitalization are expensed as incurred.

6

18.     **Debtors' Reservation of Rights**. Nothing contained in the Schedules, Statements, or Notes shall constitute a waiver of rights with respect to these chapter 11 cases, including the following:

a.      Any failure to designate a claim listed on the Debtors' Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such amount is not "disputed," "contingent," or "unliquidated." The Debtors reserve the right to dispute and to assert setoff rights, counterclaims, and defenses to any claim reflected on the Schedules as to amount, liability, and classification, and to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated."

b.      Notwithstanding that the Debtors have made reasonable efforts to correctly characterize, classify, categorize, or designate certain claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements, the Debtors nonetheless may have improperly characterized, classified, categorized, or designated certain items. The Debtors thus reserve all rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements at a later time as is necessary and appropriate.

c.      The listing of a claim (i) on Schedule D as "secured," (ii) on Schedule E/F (Part 1) as "priority," (iii) on Schedule E/F (Part 2) as "unsecured," or (iv) listing a contract or lease on Schedule G as "executory" or "unexpired" does not constitute an admission by the Debtors of the legal rights of the claimant, or a waiver of the Debtors' rights to recharacterize or reclassify such claim or contract pursuant to a schedule amendment, claim objection or otherwise. Moreover, although the Debtors may have scheduled claims of various creditors as secured claims for informational purposes, no current valuation of the Debtors' assets in which such creditors may have a security interest has been undertaken. Except as provided in an order of the Bankruptcy Court, the Debtors reserve all rights to dispute and challenge the secured nature or amount of any such creditor's claims or the characterization of the structure of any transaction, or any document or instrument related to such creditor's claim.

d.      In the ordinary course of their business, the Debtors lease equipment and other assets from certain third-party lessors for use in the daily operation of their business. The Debtors have made commercially reasonable efforts to list any such leases in Schedule G, and any current amounts due under such leases that were outstanding as of the Petition Date are listed on Schedule E/F. Except as otherwise noted herein, the property subject to any such leases is not reflected in Schedule A/B as either owned property or assets of the Debtors, and neither is such property or assets of third parties within the control of the Debtors. Nothing in the Schedules is or shall be construed as an admission or determination as to the legal status of any lease (including

whether any lease is a true lease or a financing arrangement), and the Debtors reserve all rights with respect to any of such issues, including the recharacterization thereof.

e.      The claims of individual creditors for, among other things, goods, products, services or taxes are listed as the amounts entered on the Debtors' books and records and may not reflect credits, allowances or other adjustments due from such creditors to the Debtors. The Debtors reserve all of their rights with regard to such credits, allowances and other adjustments, including the right to assert claims objections and setoffs with respect to the same.

f.      The Debtors' businesses are part of a complex enterprise. Although the Debtors have exercised their reasonable efforts to ensure the accuracy of their Schedules and Statements, they nevertheless may contain errors and omissions. The Debtors hereby reserve all of their rights to dispute the validity, status, and enforceability of any contracts, agreements, and leases identified in the Debtors' Schedules and Statements, and to amend and supplement the Schedules and Statements as necessary.

g.      The Debtors further reserve all of their rights, claims, and causes of action with respect to the contracts and agreements listed on the Schedules and Statements, including the right to dispute and challenge the characterization or the structure of any transaction, document, and instrument related to a creditor's claim.

h.      The Debtors exercised their reasonable efforts to locate and identify guarantees and other secondary liability claims (the "**Guarantees**") in their executory contracts, unexpired leases, secured financings, debt instruments, and other agreements. When such Guarantees have been identified, they are included in the relevant Schedules and Statements. Guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other agreements may have been omitted inadvertently. Thus, the Debtors reserve their rights to amend and supplement the Schedules and Statements to the extent that additional Guarantees are identified. In addition, the Debtors reserve the right to amend the Schedules and Statements to re-characterize and reclassify any such contract or claim.

i.      Listing a contract or lease on the Debtors' Schedules and Statements shall not be deemed an admission that such contract is an executory contract, such lease is an unexpired lease, or that either necessarily is a binding, valid, and enforceable contract. The Debtors hereby expressly reserve the right to assert that any contract listed on the Debtors' Schedules and Statements does not constitute an executory contract within the meaning of section 365 of the Bankruptcy Code, and the right to assert that any lease so listed does not constitute an unexpired lease within the meaning of section 365 of the Bankruptcy Code.

j.  Exclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have been abandoned, have been terminated or otherwise expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. Conversely, inclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated or otherwise expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.

19.  **Global Notes Control**.  If the Schedules or Statements differ from any of the foregoing Global Notes, the Global Notes shall control.

**Specific Notes with Respect to the Debtors' Schedules**

1.  **Schedule A/B.**

a.  **A/B.3**.  As set forth more fully in the Cash Management Motion, the Debtors conduct their operations through an extensive network of bank accounts.  The values provided for in Schedule A/B, Item 3 for each account for a given Debtor reflects the ending cash balance of such account as of the Petition Date.

b.  **A/B.10–12.**  Consistent with the Debtors' financial reporting practices, certain current assets, including credit card receivables, wholesale receivables, corporate receivables, and any allowances thereof provided for in Schedule A/B, Items 11 and 12 are as of the Petition Date.  Intercompany receivables have been listed as "Other property" under Schedule A/B, Item 77.

c.  **A/B.15**.  Equity interests in subsidiaries and affiliates primarily arise from common stock ownership or member interests.  For purposes of these Schedules, the Debtors have assigned an ownership percentage for the equity interests of all of their direct subsidiaries.

d.  **A/B.18–26**.  Schedule A/B, Items 18–26 identifies the estimated value of the Debtors' inventories.  Included within the estimated values are various reserves and capitalized balances that the Debtors attribute to the total value of inventory as included within their books and records, such as on account of slow moving goods, shrinkage and markdowns.

e.  **A/B.54–58**.  The Debtors considered only real property owned in responding to Schedule A/B, Items 54–58.  However, the Debtors' real property leases are listed in Schedule G and are incorporated into Schedule A/B, Items 54-58 by reference.  The Debtors' real property leases for retail store locations are listed on Schedule G for Chinos Holdings, Inc.; J. Crew

Group, Inc.; J. Crew Operating Corp.; Grace Holmes, Inc.; J. Crew Inc.; Madewell Inc.; H.F.D. No. 55, Inc.

f.   **A/B.59–65**. The Debtors have not listed the value of the items listed in Schedule A/B, Items 59–65 because the values on the Debtors' books and records may not accurately reflect their value in the marketplace.

Additionally, certain of the Debtors have customer information from loyalty programs, customer accounts, in-store and online sales, as well as information collected from the Debtors' websites and third-party partners, which information includes personally identifiable information.   The Debtors maintain certain records in the ordinary course of business, but do not sell these lists.   Due to privacy laws, the Debtors' privacy policy, and the need to protect confidential information and individual privacy, the Debtors have not furnished any customer lists on their Schedules.

g.   **A/B.72**.  The Debtors file consolidated federal tax returns, as well as certain of their state tax returns, under Chinos Holdings, Inc.  Consequently, the Debtors maintain net and current book operating losses, carryforwards of disallowed business interest expense, and carryforwards of unused general business credits, in each case, from consolidated tax filings made by Chinos Holdings, Inc. ("**Tax Assets**"), and such Tax Assets are listed only under Item 72 of Schedule A/B for Chinos Holdings, Inc.  Additionally, the values of the Tax Assets listed in Schedule A/B, Item 72 reflect the amounts listed in the Debtors' books and records, and may reflect amounts accumulated for more than one tax year.

h.   **A/B.70–77**.  Despite exercising their commercially reasonable efforts to identify all known assets, the Debtors may not have listed all of their causes of action or potential causes of action against third parties as assets in their Schedules.  Unless otherwise noted on specific responses, items reported on Schedule A/B are reported from the Debtors' books and records as of the Petition Date.  The Debtors reserve all of their rights with respect to any claims and causes of action they may have.  Neither these Notes nor the Schedules shall be deemed a waiver of any such claims or causes of action or to prejudice or impair the assertion thereof in any way.

If a Debtor has received an intercompany receivable, such amount has been listed on Item 77, Schedule A/B for such Debtor.  Correspondingly, if a Debtor is obligated on account of an intercompany payable, such amount has been listed on Schedule E/F, Part 2 for such Debtor.

2.   **Schedule D**.  The claims listed on Schedule D, as well as the guarantees of those claims listed on Schedule H, arose and were incurred on various dates; a determination of the date upon which each claim arose or was incurred would be unduly burdensome and cost prohibitive.  Accordingly, not all such dates are included for each claim.  To the best of the Debtors' knowledge, all claims listed

on Schedule D arose or were incurred before the Petition Date.  The amounts in Schedule D are consistent with the Debtors' stipulations set forth in the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection to Prepetition Secured Parties, (V) Modifying Automatic Stay, and (VI) Granting Related Relief* [Docket No. 447] (the "**DIP Order**"), which are subject to investigation and challenge by the Creditors' Committee or other parties in interest, all as more fully set forth in the DIP Order.

Except as otherwise agreed to or stated pursuant to a stipulation, agreed order, or general order entered by the Bankruptcy Court that is or becomes final, including the DIP Order, the Debtors and their estates reserve their right to dispute and challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a creditor listed on Schedule D of any Debtor and, subject to the foregoing limitations, note as follows: (a) although the Debtors may have scheduled claims of various creditors as secured claims for informational purposes, no current valuation of the Debtors' assets in which such creditors may have a lien has been undertaken; (b) the Debtors have included the results of UCC lien searches performed prior to the Petition Date (the reporting of such results, however, shall not be deemed an admission as to the validity or existence of any such lien); (c) the Debtors reserve all rights to dispute and challenge the secured nature of any creditor's claim or the characterization of the structure of any such transaction or any document or instrument related to such creditor's claim; and (d) the descriptions provided on Schedule D only are intended to be a summary.  Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens.

Detailed descriptions of the Debtors' prepetition debt structure and descriptions of collateral relating to the debt contained on Schedule D are contained in the *Declaration of Michael J. Nicholson in Support of Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 6] (the "**First Day Declaration**").

The Debtors have listed only the administrative agent or indenture trustee for their funded secured indebtedness, but each of these secured claims are owned or beneficially controlled by a number of parties that may not be identified in the Schedules and Statements.

Except as specifically stated herein, real property lessors, equipment lessors, utility companies, and other parties which may hold security deposits or other security interests have not been listed on Schedule D.  The Debtors have not listed on Schedule D any parties whose claims may be secured through rights of setoff, deposits, or advance payments posted by, or on behalf of, the Debtors, or judgment or statutory lien rights.

3.     **Schedule E/F**

a.     **(Part 1)**.  The claims listed on Schedule E/F (Part 1) arose and were incurred
on various dates; a determination of the date upon which each claim arose
or was incurred would be unduly burdensome and cost prohibitive.
Accordingly, not all such dates are included for each claim. To the best of
the Debtors' knowledge, all claims listed on Schedule E/F arose or were
incurred before the Petition Date.

The Debtors have not listed certain wage, or wage-related obligations that
the Debtors have paid pursuant to First Day Orders on Schedule E/F.  The
Debtors reserve the right to dispute or challenge whether creditors listed on
Schedule E/F are entitled to priority status pursuant to sections 503 and 507
of the Bankruptcy Code.

Claims owing to various taxing authorities to which the Debtors potentially
may be liable are included on the Debtors' Schedule E/F.  Certain of such
claims, however, may be subject to ongoing audits and the Debtors
otherwise are unable to determine with certainty the amount of the
remaining claims listed on Schedule E/F.  Therefore, the Debtors have listed
all such claims as disputed, contingent, and unliquidated, pending final
resolution of ongoing audits or other outstanding issues.

The Debtors reserve the right to assert that any claim listed on Schedule E/F
does not constitute a priority claim under the Bankruptcy Code.

b.     **(Part 2)**.  The Debtors have exercised their commercially reasonable efforts
to list all liabilities on Schedule E/F of each applicable Debtor.  As a result
of the Debtors' consolidated operations, however, the reader should review
Schedule E/F for all Debtors in these cases for a complete understanding of
the unsecured debts of the Debtors.  Certain creditors listed on Schedule E/F
may owe amounts to the Debtors, and, as such, the Debtors may have valid
setoff and recoupment rights with respect to such amounts.  The amounts
listed on Schedule E/F may not reflect any such right of setoff or
recoupment, and the Debtors reserve all rights to assert the same and to
dispute and challenge any setoff and recoupment rights that may be asserted
against the Debtors by a creditor.  Additionally, certain creditors may assert
mechanic's, materialman's, or other similar liens against the Debtors for
amounts listed on Schedule E/F.  The Debtors reserve their rights to dispute
and challenge the validity, perfection, and immunity from avoidance of any
lien purported to be perfected by a creditor listed on Schedule E/F of any
Debtor.  In addition, certain claims listed on Schedule E/F (Part 2) may be
entitled to priority under 11 U.S.C. § 503(b)(9).

The Debtors have made reasonable efforts to include all unsecured creditors
on Schedule E/F including, but not limited to, lease counterparties, taxing
authorities, trade creditors, and service providers.  The amounts listed in

Schedule E/F with respect to certain trade creditors are consistent with the Debtors' stipulations set forth in each such creditors' ongoing trade agreement, as applicable.[1]  The Debtors have made reasonable efforts to include certain balances on Schedule E/F, including deferred liabilities, accruals, or general reserves, but may not have included all balances where impracticable.  Such amounts are, however, reflected on the Debtors' books and records as required in accordance with GAAP.  Such accruals primarily represent general estimates of liabilities and do not represent specific claims as of the Petition Date.  The Debtors have made reasonable efforts to include as contingent, unliquidated and disputed the claim of any party not included on the Debtors' open accounts payable that is associated with an account that has an accrual or receipt not invoiced.

Schedule E/F also contains information regarding pending litigation involving the Debtors.  In certain instances, the relevant Debtor that is the subject of the litigation is unclear or undetermined.  To the extent that litigation involving a particular Debtor has been identified, however, such information is included on that Debtor's Schedule E/F.  The amounts for these potential claims are listed as undetermined and marked as contingent, unliquidated, and disputed in the Schedules.

The aggregate net intercompany payable amounts listed in Schedule E/F may or may not result in allowed or enforceable claims by or against a given Debtor, and listing these payables is not an admission on the part of the Debtors that the Intercompany Claims are enforceable or collectable.  The intercompany payables also may be subject to recoupment, netting, or other adjustments made pursuant to intercompany policies and arrangements not reflected in the Schedules.

Additionally, the Bankruptcy Court has authorized the Debtors to pay, in their discretion, certain unsecured claims, pursuant to the First Day Orders.  To the extent practicable, each Debtor's Schedule E/F is intended to reflect the balance as of the Petition Date, adjusted for postpetition payments of some or all of the Bankruptcy Court-approved payments.  Each Debtor's Schedule E/F will reflect some of the Debtor's payments of certain claims pursuant to the First Day Orders, and, to the extent an unsecured claim has been paid or may be paid, it is possible such claim is not included on Schedule E/F.  Certain Debtors may pay additional claims listed on Schedule E/F during these Chapter 11 cases pursuant to these and other orders of the Bankruptcy Court and the Debtors reserve all of their rights to update Schedule E/F to reflect such payments or to modify the claims

---

[1]  Further information and a form of the Debtors' ongoing trade agreements is set forth in the Debtors' *Final Order (I) Authorizing Debtors to Pay Certain Prepetition Claims, Lien Claims, and 503(b)(9) Claims, (II) Confirming Administrative Expense Priority of Undisputed Prepetition Orders, and (III) Granting Related Relief* [Docket No. 384].

register to account for the satisfaction of such claim. Additionally, Schedule E/F does not include potential rejection damage claims, if any, of the counterparties to executory contracts and unexpired leases that have been, or may be, rejected.

4.    **Schedule G**. Although reasonable efforts have been made to ensure the accuracy of Schedule G regarding executory contracts and unexpired leases (collectively, the "**Agreements**"), review is ongoing and inadvertent errors, omissions or overinclusion may have occurred. The Debtors may have entered into various other types of Agreements in the ordinary course of their businesses, such as indemnity agreements, supplemental agreements, and amendments/letter agreements that may not be set forth in Schedule G. In addition, as described herein, certain non-disclosure agreements and or other confidential information have been omitted, as well as certain short-term purchase and sales orders given their large number and transitory nature.

Omission of an agreement from Schedule G does not constitute an admission that such omitted agreement is not an executory contract or unexpired lease. Schedule G may be amended at any time to add any omitted Agreements. Likewise, the listing of an Agreement on Schedule G does not constitute an admission that such Agreement is an executory contract or unexpired lease or that such Agreement was in effect on the Petition Date or is valid or enforceable. The Agreements listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letter and other documents, instruments and agreements that may not be listed on Schedule G. Executory agreements that are oral in nature have not been included in Schedule G. Any and all of the Debtors' rights, claims and causes of action with respect to the Agreements listed on Schedule G are hereby reserved and preserved, and as such, the Debtors hereby reserve all of their rights to (i) dispute the validity, status, or enforceability of any Agreements set forth on Schedule G, (ii) dispute or challenge the characterization of the structure of any transaction, or any document or instrument related to a creditor's claim, including, but not limited to, the Agreements listed on Schedule G and (iii) to amend or supplement such Schedule as necessary. Certain of the Agreements listed on Schedule G may have been entered into on behalf of more than one of the Debtors. Additionally, the specific Debtor obligors to certain of the Agreements may not have been specifically ascertained in every circumstance. In such cases, the Debtors have made reasonable efforts to identify the correct Debtor's Schedule G on which to list the Agreement and, where a contract party remained uncertain, such Agreement may have been listed on a different Debtor's Schedule G.

5.    **Schedule H**. The Debtors are party to various debt agreements, which were executed by multiple Debtors. The obligations of guarantors under prepetition, secured credit agreements are noted on Schedule H for each individual debtor. In the ordinary course of their businesses, the Debtors are involved in pending or threatened litigation and claims arising out of the conduct of their businesses. Some of these matters may involve multiple plaintiffs and defendants, some or all of

whom may assert cross-claims and counter-claims against other parties. Because such claims are listed on each Debtor's Schedule E/F and Statement 7, as applicable, they have not been set forth individually on Schedule H. Furthermore, the Debtors may not have identified certain guarantees that are embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments and other such agreements. No claim set forth on the Schedules and Statements of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other Debtors or non-Debtors. If there are guarantees connected with any joint ventures to which the Debtors may be a party, such agreements are not identified in the Debtors' Schedules. The Debtors reserve all of their rights to amend the Schedules to the extent that additional guarantees are identified or such guarantees are discovered to have expired or be unenforceable.

### Specific Notes With Respect to the Debtors' Statements

1.   **Statement 1.**   Sales are reflected net of returns and allowances, discounts, and certain other adjustments. Negative revenue relates to discounts on gift cards sold through third parties.

The Debtors' fiscal year ends on the Saturday closest to January 31:

FY 2017: Composed of 53 weeks ending February 3, 2018.

FY 2018: Composed of 52 weeks ending February 2, 2019.

FY 2019: Composed of 52 weeks ending February 1, 2020.

2.   **Statement 3**.   The obligations of the Debtors are primarily paid by and through J. Crew Operating Corp., notwithstanding the fact that certain obligations may be obligations of one or more of the affiliated Debtors or non-Debtor affiliates.

The payments disclosed in Statement 3 are based on payments made by the Debtors with payment dates from February 4, 2020 to May 4, 2020. The actual dates that cash cleared the Debtors' bank accounts may differ based on the form of payment. The Debtors' accounts payable system does not include the corresponding payment clear dates and compiling this data would have required a significant manual review of individual bank statements. It is expected, however, that many payments included in Statement 3 have payment clear dates that are the same as payment dates (*e.g.*, wires and other forms of electronic payments).

The responses to Statement 3 exclude certain disbursements or transfers to creditors otherwise listed in Statement 9, Statement 11, and payments made on account of certain employee obligations including, but not limited to, medical costs and business expense reimbursements.

15

3. **Statement 4**.  The Debtors reserve all rights with respect to the determination or status of a person as an "insider" as defined in section 101(13) of the Bankruptcy Code.  For more information regarding each Debtor's officers and directors, *see* Statement 28 and Statement 29.

Question 4 of the Statements does not account for merchandise that may have been moved between the Debtors' locations because such transfers are recorded through ordinary course accounting entries.

The payroll-related amount shown in response to this question, which includes, among other things, salary, wage, additional compensation, is a gross amount that does not include reductions for amounts including employee tax or benefit withholdings.  In the ordinary course of business, certain corporate or personal credit cards may be utilized by insiders to pay for travel and business-related expenses for various other individuals employed by the Debtors.  As it would be unduly burdensome for the Debtors to analyze which credit card expenses related to those incurred on behalf of an insider as opposed to another employee (or the Debtors), the Debtors have listed the aggregate amount paid for such expenses.  Amounts still owed to creditors will appear on the Schedules for each of the Debtors.

4. **Statement 5**.  On occasion, the Debtors may return damaged or unsatisfactory goods to vendors in the ordinary course of business.  Other than ordinary course items, the Debtors are not aware of any property that has been returned to the seller.

5. **Statement 6**.  The Debtors maintain certain customer programs, including return and refund programs pursuant to which customers may receive credits.  Such transactions were not considered setoffs for the purpose of responding to Statement 6, although the Debtors reserve all rights with respect thereto and make no admission of waiver thereby.

The Debtors have otherwise used their reasonable efforts to reflect setoffs made by creditors without permission that they are aware of; however, there may be instances, including credits due to landlords, when such a setoff has occurred without the Debtors' knowledge.

6. **Statement 7**.  The Debtors reserve all of their rights and defenses with respect to any and all listed lawsuits and administrative proceedings.  The listing of such suits and proceedings shall not constitute an admission by the Debtors of any liabilities or that the actions or proceedings were correctly filed against the Debtors or any affiliates of the Debtors.  The Debtors also reserve their rights to assert that neither the Debtors nor any affiliate of the Debtors is an appropriate party to such actions or proceedings.  Further, the Debtors operate in numerous jurisdictions and in the ordinary course of business may have disputed property valuations/tax assessments.  The Debtors have not listed such disputes on Statement 7.

16

7.     **Statement 10**.  The losses listed may exclude those incurred in the ordinary course of business or those where the amount is *de minimis*.

8.     **Statement 11**.  The Debtors have used reasonable efforts to identify payments for services of any entities who provided consultation concerning debt counseling or restructuring services, relief under the Bankruptcy Code or preparation of a petition in bankruptcy within one year immediately preceding the Petition Date, which are identified in J. Crew Operating Corp.'s response to Statement 11.  Additional information regarding the Debtors' retention of professional service firms is more fully described in the individual retention applications for those firms and related orders.

9.     **Statement 13**.  The Debtors may, from time to time and in the ordinary course of business, transfer equipment and other assets and sell certain equipment and other assets to third parties. These types of ordinary course transfers have not been disclosed in Statement 13.  The Debtors further do not take any position with respect to whether transfers identified in response to Statement 13 are made in the ordinary course of business.  Certain transfers listed in this response are included solely out of an abundance of caution.

       If the Debtors vacated store locations during the three years immediately preceding the Petition Date, information on these former store locations is contained in the Debtors' response to Statement 14.

10.    **Statement 21**.  In the ordinary course of business, the Debtors' corporate and retail locations contain various equipment and items owned by others including copy machines and computer hardware.  Additionally, the Debtors utilize leased property in their ordinary course of business.  Therefore, the Debtors hold property subject to leases listed on the Debtors' Schedule G.

       Certain of the Debtors' vendors sell inventory and fulfill orders through the Debtors' e-commerce platforms (such vendors, the "**Marketplace Vendors**").  The Debtors do not physically possess the inventory at any time; however, the Debtors collect payment for the goods sold through their e-commerce platforms and pay the Marketplace Vendors on a monthly (or, at the Debtors' option, more frequent) basis the proceeds of any goods sold, less a commission and other amounts due to the Debtors.  Out of an abundance of caution, the Debtors have included the property of the Marketplace Vendors in the Debtors' response to Statement 21, although the Debtors have indicated that the value of such property is "unknown" or "undetermined."  Although reasonable efforts have been made to ensure the accuracy of Statement 21, review is ongoing and inadvertent errors, omissions or overinclusion may have occurred.

11.    **Statement 26(d)**.  The Debtors provided financial statements in the ordinary course of business to certain parties for business, statutory, credit, financing and other reasons.  Recipients have included regulatory agencies, financial institutions,

investment banks, debtholders, and their legal and financial advisors.  Financial statements have also been provided to other parties as requested.

12.     **Statement 27**.  The amounts listed in the response to Statement 27 include all inventory held by the Debtors in retail locations.

13.     **Statement 29**.  Disclosures relate specifically to terminated job titles or positions and are not indicative of the individuals' current employment status with the Debtors.

14.     **Statement 30**.  Any and all known disbursements to insiders of the Debtors have been listed in the response to Statement 4.  The items listed under Statement 30 incorporate by reference any items listed under Statement 4, and vice versa.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| Debtor Name | **J. Crew Virginia, Inc.** |
|---|---|
| **United States Bankruptcy Court for the Eastern District of Virginia** | |
| Case number (if known): | **20-32180** |

☐ Check if this is an amended filing

Official Form 207

## Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy

04/19

**The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).**

**Part 1:    Income**

**1. Gross Revenue from business**

☒ None

| **Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year** | **Sources of Revenue** | **Gross Revenue** (before deductions and exclusions) |
|---|---|---|

**2. Non-business revenue**

Include revenue regardless of whether that revenue is taxable. Non-business income may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☒ None

| | **Description of sources of revenue** | **Gross Revenue from** (before deductions and exclusions) |
|---|---|---|

**Part 2:    List Certain Transfers Made Before Filing for Bankruptcy**

**3. Certain payments or transfers to creditors within 90 days before filing this case**

List payments of transfers - including expense reimbursements to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☒ None

| **Creditor's name and address** | **Dates** | **Total amount or value** | **Reasons for payment or transfer** *Check all that apply* |
|---|---|---|---|

**4. Payments or other transfers of property made within 1 year before filing  this case that benefited any insider**

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. Insiders include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

[X] None

| Insider's name and address | Dates | Total amount or value | Reasons for payment or transfer |
|---|---|---|---|

**5. Repossessions, foreclosures, and returns**

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

[X] None

| Creditor's name and address | Description of the property | Date | Value of property |
|---|---|---|---|

**6. Setoffs**

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

[X] None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|

**Part 3:    Legal Actions or Assignments**

**7. Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

[ ] None

| | Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|---|
| 7.1 | Eaton Vance Management, et al. v. Wilmington Savings Fund Society, FSB, as Administrative Agent and Collateral Agent, et al., Index No. 654397/2017 (Sup. Ct. N.Y. C'ty.) | Alleged Breach of the Term Loan Agreement | Supreme Court of NY, New York County | [✓] Pending [ ] On appeal |
| | **Case number** | | | [ ] Concluded |

Official Form 207    Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy

In re   J. Crew Virginia, Inc.                                                              Case No.   20-32180

---

**8. Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

[X] None

| Custodian's name and address | Description of the property | Value |
|---|---|---|

---

**Part 4:**       **Certain Gifts and Charitable Contributions**

**9. List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of gifts to that recipient is less than $1,000**

[X] None

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|

---

**Part 5:**       **Certain Losses**

**10. All losses from fire, theft, or other casualty within 1 year before filing this case.**

[X] None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss | Date of loss | Value of property lost |
|---|---|---|---|
| | If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received. List unpaid claims on Official Form 106 A/B (Schedule A/B: Assets - Real and Personal Property). | | |

---

**Part 6:**       **Certain Payments of Transfers**

---

Official Form 207               Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy

In re   J. Crew Virginia, Inc.                                                                 Case No.   20-32180

**11. Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

[X] None

| Who was paid or who received the transfer? Address | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|

---

**12. Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

[X] None

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|

---

**13. Transfers not already listed on this statement**

List any transfers of money or other property - by sale, trade, or any other means - made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

[X] None

| Who received transfer? Address. | Description of property transferred or payments received or debts paid in exchange. | Date transfer was made | Total amount or value |
|---|---|---|---|

---

**Part 7:      Previous Locations**

**14. Previous addresses**

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

[X] Does not apply

| Address | Dates of occupancy |
|---|---|

---

**Part 8:      Health Care Bankruptcies**

**15. Health Care bankruptcies**

Official Form 207                    Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy

In re    J. Crew Virginia, Inc.                                                Case No.    20-32180

Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ No    Go to Part 9.
☐ Yes.  Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|
| | Location where patient records are maintained | How are records kept?<br>☐ Electronically<br>☐ Paper |

---

## Part 9:    Personally Identifiable Information

**16. Does the debtor collect and retain personally identifiable information of customers?**

☑ No
☐ Yes. State the nature of the information collected and retained.

Does the debtor have a privacy policy about that information?
☐ No
☐ Yes.

---

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☑ No    Go to Part 10.
☐ Yes. Does the debtor serve as plan administrator?

☐ No. Go to Part 10.
☐ Yes. Fill in below:

| Name of plan | Employer identification number of plan<br>EIN: |
|---|---|

Has the plan been terminated?
☐ No
☐ Yes

---

## Part 10:    Certain Financial Accounts, Safe Deposit Boxes, and Storage Units

**18. Closed financial accounts**

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☒ None

| Financial institution name and address | Last 4 digits of account number | Type of account | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

Official Form 207    Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy

☐ Checking
☐ Savings
☐ Money Market
☐ Brokerage
☐ Other

---

**19. Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

**X** None

| Depository institution name and address | Names of anyone with access to it. Address | Description of contents | Does debtor still have it? |
|---|---|---|---|
| | | | ☐ No |
| | | | ☐ Yes |

---

**20. Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

**X** None

| Facility name and address | Names of anyone with access to it. Address | Description of contents | Does debtor still have it? |
|---|---|---|---|
| | | | ☐ No |
| | | | ☐ Yes |

---

| Part 11: | Property the Debtor Holds or Controls That the Debtor Does Not Own |
|---|---|

**21. Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

**X** None

| Owner's name and address | Location of the property | Description of the property | Value |
|---|---|---|---|
| | | | |

**Part 12:**      **Details About Environmental Information**

For the purpose of Part 12, the following definitions apply:
- Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium)
- Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.
- Hazardous material means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**22. Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

☑ No
☐ Yes. Provide details below.

| Case title | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|
| | | | ☐ Pending |
| | | | ☐ On appeal |
| **Case number** | | | ☐ Concluded |

**23. Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

☑ No
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| | | | |

**24. Has the debtor notified any governmental unit of any release of hazardous material?**

☑ No
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| | | | |

**Part 13:**      **Details About the Debtor's Business or Connections to Any Business**

**25. Other businesses in which the debtor has or has had an interest**

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

**[X]** None

| Business name and address | Describe the nature of the business | Employer identification number. Dates business existed |
|---|---|---|

---

**26. Books, records, and financial statements**

**26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.**

[ ] None

| Name and address | Dates of service |
|---|---|
| 26a.1  Vincent Zanna<br>Chief Financial Officer<br>225 Liberty Street<br>New York, NY  10281 | 2009 - Present |
| 26a.2  Jeremy Brooks<br>Chief Accounting Officer<br>225 Liberty Street<br>New York, NY  10281 | 2007 - Present |

**26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.**

[ ] None

| Name and address | Dates of service |
|---|---|
| 26b.1  KPMG LLP<br>345 Park Avenue<br>New York, NY 10080 | 1997 - Present |
| 26b.2  Ryan LLC<br>Three Galleria Tower<br>13155 Noel Rd, Ste 100<br>Dallas, TX 75240-5090 | |
| 26b.3  Deloitte Consulting LLP<br>30 Rockefeller Plz, 41st Fl<br>New York, NY 10112-0015 | |
| 26b.4  Deloitte Tax LLP<br>P.O. Box 844736<br>Dallas, TX 75284-4736 | |

**26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.**

[ ] None

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|
| 26c.1  Vincent Zanna<br>Chief Financial Officer<br>225 Liberty Street<br>New York, NY  10281 | |
| 26c.2  Jeremy Brooks<br>Chief Accounting Officer<br>225 Liberty Street<br>New York, NY  10281 | |

26c.3   KPMG LLP
345 Park Avenue
New York, NY 10080

**26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.**

☐ None

**Name and address**

26d.1   Bank of America, N.A.
(Administrative Agent and
Collateral Agent under
ABL Credit Agreement)
100 Federal St
Boston, MA 02110

26d.2   Wilmington Savings Fund
Society, FSB
(Administrative Agent and
Collateral Agent under
Term Loan Agreement)
500 Delaware Ave
Wilmington, DE 19801

## 27. Inventories

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☑ No
☐ Yes.  Give the details about the two most recent inventories

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|

**Name and address of the person who has possession of inventory records**

**28. List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| | Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|---|
| 28.1 | Michael Nicholson
225 Liberty Street
New York, NY 10281 | | Chief Operating Officer, Director | |
| 28.2 | Vincent Zanna
225 Liberty Street
New York, NY 10281 | | Chief Financial Officer & Treasurer | |
| 28.3 | Lynda Markoe
225 Liberty Street
New York, NY 10281 | | Chief Administrative Officer, Director | |
| 28.4 | Maria Di Lorenzo
225 Liberty Street
New York, NY 10281 | | Senior Vice President, General Counsel & Secretary, Director | |

In re    J. Crew Virginia, Inc.                                                                    Case No.    20-32180

28.5    Jeremy Brooks                              Senior Vice President &
        225 Liberty Street                         Chief Accounting Officer
        New York, NY 10281

---

**29. Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☑ No
☐ Yes. Identify below.

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|------|---------|-------------------------------------|---------------------------------------------------|

---

**30. Payments, distributions, or withdrawals credited or given to insiders**

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☑ No
☐ Yes. Identify below.

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing this value |
|-------------------------------|------------------------------------------------------|-------|----------------------------------|

Relationship to debtor

---

**31. Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☐ No
☑ Yes. Identify below.

| | Name of the parent corporation | Employer identification number of the parent corporation |
|---|--------------------------------|----------------------------------------------------------|
| 31.1 | Chinos Holdings Inc. | 27-4173834 |

---

**32. Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ No
☐ Yes. Identify below.

| Name of the pension fund | Employer identification number of the pension fund |
|--------------------------|----------------------------------------------------|

---

**Part 14:    Signature and Declaration**

**WARNING**    Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on.    6/12/2020
                MM / DD / YYYY

/s/Vincent Zanna                                        Printed name    Vincent Zanna
Signature of individual signing on behalf of the debtor

Position or relationship to the debtor    Chief Financial Officer

---

Official Form 207    **Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

In re   J. Crew Virginia, Inc.                                                    Case No.   20-32180

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy*   (Official Form 207) attached?**

☑ No

☐ Yes